IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2014-NMSC-002

Filing Date: December 19, 2013

Docket No. 34,210

JOANNA BARTLETT, LENORE PARDEE,
DAVID HAMILTON, and BETH LEHMAN,

      Petitioners,

v.

MARY LOU CAMERON, RUSSELL GOFF,
DELMAN SHIRLEY, BRADLEY DAY, HANA
SKANDERA, JAMES B. LEWIS, and J. THOMAS MCGUCKIN,
in their official capacities as Board of Trustees of the New Mexico
Education Retirement Board, and JAN GOODWIN, in her official
capacity as Executive Director of the New Mexico Education Retirement
Board,

      Respondents.

ORIGINAL PROCEEDING

Sara Berger, Attorney at Law, L.L.C.
Sara K. Berger
Albuquerque, NM

Garcia Ives Nowara, L.L.C.
Mary Emily Schmidt-Nowara
Albuquerque, NM

for Petitioners

Gary K. King, Attorney General
Scott Fuqua, Assistant Attorney General
Santa Fe, NM

Christopher Graham Schatzman
Anita Xochitl Tellez
Santa Fe, NM

1

for Respondents

Youtz & Valdez, P.C.
Shane Youtz
Stephen Curtice
James A. Montalbano
Albuquerque, NM

for Amicus Curiae
American Federation of State, County and Municipal Employees

**OPINION**

**BOSSON, Justice.**

**{1}** Petitioners are retired teachers, professors and other public education employees (collectively, Retirees) who seek a writ of mandamus against the New Mexico Education Retirement Board (ERB), which administers their retirement plan under the Educational Retirement Act (ERA). *See* NMSA 1978, § 22-11-6 (2011) (describing the powers and duties of the ERB); *see also* NMSA 1978, §§ 22-11-11 to -15 (2011) (describing the educational retirement fund). Retirees seek to compel the ERB to pay them an annual cost-of-living adjustment (COLA) to their retirement benefits, calculated according to the statutes "*in effect at the time of Petitioners' date of maturity of their rights*," instead of the current statutes as recently modified by our Legislature.

**{2}** In requesting this writ, Retirees challenge the constitutionality of a recent legislative amendment that reduces the future amounts all educational retirees might receive as a COLA. *See* NMSA 1978, § 22-11-31 (2013). Essentially, the narrow question before this Court is whether the New Mexico Constitution grants Retirees a right to an annual cost-of-living adjustment to their retirement benefit, based on the COLA formula in effect on the date of their retirement, for the entirety of their retirement. For the reasons discussed below, we conclude that the New Mexico Constitution affords Retirees no such right, and accordingly we deny the writ of mandamus.

**BACKGROUND**

**{3}** Facing a perceived threat to the fiscal stability of the ERB retirement plan, the 2013 New Mexico Legislature passed, and the Governor signed, Senate Bill 115 (SB 115). 2013 N.M. Laws, ch. 61. Between 2001 and 2012, the funded ratio for the ERB retirement plan fell from 86.8% to 60.7% as of June 30, 2012, partially the result of two significant economic downturns during that period, thereby placing the viability of the plan in

2

jeopardy.[1] *See* New Mexico Legislative Finance Committee Fiscal Impact Report, Educational Retirement Changes, SB115/aSFC/aHAFC, at 3 (March 14, 2013), *available at* http://www.nmlegis.gov/Sessions/13%20Regular/firs/SB0115.PDF. As one of the legislative measures designed to meet this challenge, SB 115 amended Section 22-11-31 (2010), thereby reducing COLA amounts payable to all retirees after July 1, 2013. *Compare* § 22-11-31 (2010), *with* § 22-11-31 (2013). Thus, under the amended COLA provision, Retirees received a smaller COLA increase on July 1, 2013, and will continue to do so in future years—up to twenty percent less—as compared with what they would have received under the COLA provisions in effect at the time of their respective retirements. *See* § 22-11-31 (2013)(C)(3)(b) and (d). To be clear, the 2013 amendment reduces only the COLA; the underlying retirement benefits or annuities payable to Retirees remain unaffected.

**{4}** Since 1979, state law has provided a cost-of-living adjustment to the underlying retirement benefit "annually and cumulatively," on July 1 of each year. *See* § 22-11-31(B). The "adjustment factor" of the COLA was based upon the difference, if any, between the consumer price index (CPI) of the two years preceding the date of adjustment. *Id.* Starting in 1984, the adjustment factor was equal to one-half of the percentage change in the CPI, but could not exceed four percent per year. *See* § 22-11-31 (1984). In 1987, the adjustment factor calculation was amended to allow that if the CPI percentage change was less than two percent, the adjustment factor was equal to the percentage change. *See* § 22-11-31(B) (1987). Under the 2013 amendment, the adjustment factor may be reduced by a set percentage determined by the funded ratio for that year, the employee's years of service credit, and the value of their annuity compared to the "median annual annuity." *See* §22-11-31(C) (2013).

**{5}** In broad terms, therefore, the annual cost-of-living adjustment, if any, has been tied to changes in the CPI, by definition an index that varies with the cost of living from year to year. Accordingly, the amount of any such adjustment, would also change with each new annual CPI. And the COLA compounded each subsequent year, meaning that, once paid, it became part of the underlying retirement benefit to which the next year's CPI-related adjustment factor was applied.

**{6}** Even though the COLA factor remained substantially the same from 1984 to 2013, from time to time the Legislature provided additional statutory adjustments. In 1991 and again in 1999, one-time, special adjustments for retirees receiving "an annuity" (i.e., monthly benefits) were added to the annual COLAs for those years. *See* § 22-11-31(F) (1991, 1999). In addition, a 2010 amendment eliminated the possibility of a negative adjustment factor,

---

[1] The funded ratio is the quantitative relationship between the current assets and the accrued liabilities of the retirement fund. Essentially, if the funded ratio were 60.7%, then there would only be enough money in the fund to pay 60.7% of the liabilities if all the liabilities were due and required payment at that specific time. A one hundred percent funded ratio would mean that the fund had the ability to pay all its liabilities at any given time, and thus, the fund would be operating in a more financially sound manner.

3

which had previously been part of the statute, a provision that allowed the COLA to be reduced as long as the retiree's underlying benefit was not reduced "below that which [the retiree] received on the date of . . . retirement." *Compare* NMSA 1978, § 22-11-31(B) (1999), *with* NMSA 1978, § 22-11-31(B) (2010). Accordingly, the history of the COLA affecting retirees over the past twenty-five years or so suggests that it has not been static, but has changed from time to time at the discretion of our Legislature.

**{7}** Despite a history of periodic legislative increases, Retirees take the position that the Legislature may not *reduce* their COLA for 2013 and subsequent years. They claim a vested property right in the COLA calculation method that was effective on the date of their eligibility for retirement. Retirees base their claim on Article XX, Section 22 of the New Mexico Constitution, which provides that under certain conditions a public employee "shall acquire a vested property right with due process protections" in a retirement *plan*. N.M. Const. art. XX, § 22 (D). The Constitution makes no mention of a cost-of-living adjustment to a retirement plan, which calls into question the breadth of the "vested property right" guaranteed in Article XX, Section 22 of the New Mexico Constitution.

**{8}** Retirees' request for a writ of mandamus necessarily requires us to determine that SB 115 is unconstitutional as applied to them. When a petitioner would not otherwise have a "plain, speedy, and adequate remedy at law," a writ of mandamus may be used to question the constitutionality of a state statute. *See Montoya v. Blackhurst*, 1972-NMSC-058, ¶¶ 4, 6, 84 N.M. 91, 500 P.2d 176. Here, SB 115's constitutionality as applied to the Retirees is dispositive of whether the ERB has a constitutional duty to pay Retirees any COLA, including the amount under the statutes in effect at the time they were eligible to retire.

**{9}** Retirees raise a significant legal issue that potentially affects a substantial number of New Mexico's retiree population. That question also has an impact upon the fiscal health of the public trust funds created by law to provide retirement benefits into the foreseeable future. Implicated as well is the authority of our Legislature as a separate and coequal branch of state government to take legislative action designed to ameliorate a perceived exigency. And that question, in turn, may have an impact on the health of the public treasury and future obligations of the taxpayer. Thus, the petition before us casts a long shadow; its constitutional question merits an answer from this Court. Because our decision will dispose of the matter effectively and efficiently, we turn to whether SB 115's 2013 amendment of Section 22-11-31 (2010), violates the New Mexico Constitution. Additional facts are included in our discussion below.

**DISCUSSION**

**{10}** The New Mexico Constitution provides:

> Upon meeting the minimum service requirements of an applicable retirement plan created by law for employees of the state or any of its political subdivisions or institutions, a member of a plan shall acquire a

vested property right with due process protections under the applicable provisions of the New Mexico and United States constitutions.

N.M. Const. art. XX, § 22(D); *see also* N.M. Const. art. II, § 18 (guaranteeing any person protection against deprivation of "life, liberty or property without due process of law"); U.S. Const. amend. V (same); U.S. Const. amend. XIV, incorporating amend. V. The New Mexico Constitution does not define an employee's vested property right in his or her "retirement *plan*." However, we take notice that this provision was added to the Constitution only two years after this Court issued *Pierce v. State*, 1996-NMSC-001, 121 N.M. 212, 910 P.2d 288, which discussed an employee's vested property right in a retirement *benefit*. We require that the Constitution be read harmoniously with what we said contemporaneously in *Pierce.*

**{11}**     In *Pierce*, 1996-NMSC-001, ¶ 43, this Court held that "the express language of the [ERA] . . . creates an expectancy, or property interest, in receiving benefits" that vests in employees upon meeting the minimum requirements to qualify them to be eligible to receive retirement benefits. *Pierce* then acknowledged that "[t]he specific amounts of benefits to be received are indeterminate at the time the property right vests." *Pierce,* 1996-NMSC-001, ¶ 44. Instead, "[t]he details of the vested rights are to be determined by the statutes in effect at the time of maturity." *Id.* ¶ 44. The specific amount of the retirement benefit is substantially defined "when the terms for retirement have been met," unless the Legislature "choose[s] to establish a different point of maturity." *Id.* ¶ 44; *see also* NMSA 1978, §§ 22-11-23 to -24 (1967, as amended through 2013) (specifying when a member becomes eligible for retirement under the ERA). Accordingly, the employee has a property right in that retirement benefit as matured and defined when "the final statutory condition is met." *See Pierce*, 1996-NMSC-001, ¶ 43. And under both *Pierce* and the New Mexico Constitution, that property right is subject to due process protections.

**{12}**     However, a cost-of-living *adjustment* to a retirement benefit, by it own terms, is not necessarily the same thing as the underlying retirement benefit. Retirees argue that "the COLA for ERA retirees is inseparably tied to their pension benefits and is, therefore, a vested property right afforded the same constitutional protections as the pension." Thus, they argue, reducing the amount of the COLA increase they would potentially receive under former statutes decreases the value of their retirement benefit, essentially the same as if the Legislature had cut their retirement benefits during their retirement. Retirees do not argue that the COLA could not be adjusted upwards but only that it cannot be decreased. Somewhat inconsistently, however, in arguing their position, Retirees do not address the provisions in the COLA statute prior to the 2010 amendment, that provided for the possibility of a negative adjustment that could decrease any previous adjustment, as long as the retiree's benefit was not reduced "below that which [the member] received upon the date of . . . retirement." *See* § 22-11-31(B) (1984, 1987, 1991, 1999); *see also* § 22-11-31(D) (providing in the event that the adjustment factor decreases the benefit, it shall not be less than "the amount of the [benefit] payable as of the beginning date of the [benefit]").

5

**{13}** The State supports the COLA reduction. At oral argument, the State appeared to argue that the Legislature could reduce not only the COLA, but also the underlying retirement benefit, even after the date of retirement, a questionable assertion that we need not address in this opinion. *See* N.M. Const. art. XX, § 22(E) ("Nothing in this section shall be construed to prohibit modifications to retirement plans that enhance or preserve the actuarial soundness of an affected trust or individual retirement plan."). The State does not go to such extremes in its briefing, however, which addresses only modification of the COLA applied prospectively. The State argues that the COLA is not part of the retirement benefit. Instead, "[the COLA] is a separate amount that a retiree might receive, but only when there is a year over year increase in the CPI." Consequently, under this argument the COLA is merely an expectation of sums that might be paid in future years, subject to legislative grace, and *not* a protectable property right. We proceed to examine SB 115 through the prism of both *Pierce* and the New Mexico Constitution.

**{14}** Reading the Constitution and *Pierce* harmoniously, it appears that the retirement *benefit,* or annuity, would be at least part of a retiree's underlying vested property right within the larger retirement *plan. See* N.M. Const. art. XX, § 22(D); *Pierce*, 1996-NMSC-001, ¶¶ 41-44. At this time, we are not required, and therefore decline to decide, the full scope of the vested property right in a retirement plan. In this case, we assume that the retirement benefit is part of a retiree's vested property right in a retirement plan. As we have seen, Retirees argue that the COLA is part of the retirement benefit, and thus constitutionally protected. The State argues that the COLA is not part of the retirement benefit, and thus *not* constitutionally protected. The question before this Court, then, is whether the COLA is part of the retirement benefit. And for that question, we look to state law, the legal authority that defines the scope of property rights subject to due process protections. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) ("Property interests . . . are not created by the Constitution [but] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."); *see also Pierce*, 1996-NMSC-001, ¶¶ 17, 52, 55 (courts look to statutes as the state law that determines the vested rights created and defined by the legislative intent, rights which are then protected by the Constitution and due process).

**{15}** The ERA defines "retirement benefit" as "an annuity paid monthly to members whose employment has been terminated by reason of their age." NMSA 1978, § 22-11-2(M) (2004). The ERA also defines the substantive right to a retirement benefit employees receive, which depends upon the date of their retirement; for example:

> Retirement benefits for a member age sixty or over, retired pursuant to the [ERA] on or after July 1, 1987 but not later than June 30, 1991, shall be paid monthly and shall be one-twelfth of a sum equal to two and fifteen hundredths percent of the member's average annual salary multiplied by the number of years of the member's total service credit . . . .

6

NMSA 1978, § 22-11-30(F) (2013). Thus, the ERA statutes refer to payments as either a retirement benefit or an annuity. None of the provisions of Section 22-11-30, which defines an employee's substantive right to a retirement benefit, refers to or includes a COLA.

**{16}**     Rather a separate section of the ERA establishes a retiree member's eligibility to receive a COLA. *See* § 22-11-31. Consistent with the *Pierce* analysis, the omission of a COLA provision from the statute that defines an employee's substantive right to a retirement benefit disqualifies the COLA as a property right. In *Pierce*, existing retirees challenged a legislative repeal of a state tax exemption that had previously been afforded to retirees, an exemption upon which those retirees relied to enhance the value of their retirement annuity. *See Pierce*, 1996-NMSC-001, ¶ 2. Notwithstanding our acknowledgment of a property right in the vested, underlying retirement benefit, we held in *Pierce* that a tax exemption was not part of the retirement benefit and did not create a constitutionally protected property right. *See id.* ¶¶ 48-49 ("A legislative intent to confer contractual or vested rights is especially suspect where the [claimed rights] are included in non-substantive provisions . . . ."). *Pierce* stated, "[w]e presume that statutes establish current public policy subject to legislative revision rather than creating either contractual or vested rights." *Id.* ¶ 48.

**{17}**     *Pierce* recognized that the statutory tax exemption for retirement benefits was a legislative tool, used to implement current public policy, *id.* ¶ 47, that effectively increased the value of the retirement benefit by exempting it from state taxation, much like the COLA in this instance. Supporting this understanding, *Pierce* found persuasive the reasoning that while taxing the retirement benefit and reducing the amount of the retirement benefit before payment appear to be similar, because they achieved a similar economic effect, they were distinguishable legislative acts. *Id.* ¶ 16. Taxing the income a retiree has received is not the same thing as reducing the amount of income a retiree has the right to receive. Vesting of the right to receive a retirement benefit protects against the reduction of that benefit by the Legislature. *Id.* ¶ 54. However, protecting the right does not prohibit the Legislature from levying a tax on the benefit, or implementing another statute that independently affects the benefit. *See id.* ¶¶ 46-49.

**{18}**     Like the tax exemption in *Pierce*, the COLA is provided independently from the obligation and payment of the retirement benefit. Reducing the COLA prospectively may affect the retiree's economic purchasing power, but it does not reduce the employee's substantive retirement benefit.

**{19}**     Unless we are satisfied that the Legislature intends to create a property right, this Court presumes that the Legislature is implementing public policy when it enacts a statute, policy which it is free to change in the future. *See id.* ¶ 48. To presume otherwise would upset the balance of the separation of powers, and affect the Legislature's ability to respond to changing economic conditions. *See id.* ¶¶ 47-48. As we said in *Pierce,* "[p]olicies, unlike contracts, are inherently subject to revision and repeal, [and to imply an obligation] when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body." *Id.* ¶ 47 (internal quotation marks and citation

7

omitted).

**{20}** Further, the COLA's history of revision supports recognizing that it is a legislative tool used to implement current public policy rather than a legislative establishment of a vested property right. Since a COLA was first provided under the ERA in 1967, *see* 1967 N.M. Laws, ch. 16, § 164 (codified as NMSA 1953, § 77-9-30 (1967)), it has been amended ten times, *see* § 22-11-31. The first three COLAs were one-time special adjustments to all retirees receiving an annuity (benefit) payment on a certain day. *See* NMSA 1953, § 77-9-30 (1967, 1971) (basing the COLA on the CPI), (1974) (providing a flat four percent adjustment). In 1979, as discussed previously, the Legislature implemented an annual adjustment subject to conditions and predicated on the percentage change of the CPI. *See* § 22-11-31 (1979). As of 1979 and until the 2010 amendment, *see* § 22-11-31(B) (2010), the COLA provision allowed for a negative adjustment so long as that decrease did not reduce the amount of the retirement benefit a retiree received as of the date of retirement, *see* § 22-11-31(D) (1979, 1981), (B) (1984, 1987, 1991, 1999). Thus, amendments to the COLA over the years demonstrate a legislative intent to promote a current public policy, subject to change, and not a clear and unambiguous legislative intent to provide a vested property right.

**{21}** Additionally, in this case, the method of determining the COLA undermines the Retirees' argument. Predominately, the ERA COLA has been tied to the CPI, which can change yearly based on economic conditions. *See* § 77-9-30(A) (1967, 1971); § 22-11-31(B) (1979, 1981,1984, 1987, 1991, 1999, 2010, 2013). In some years the CPI may decrease and thus generate a negative percentage change, which logically would suggest an adjustment decrease, a possibility under the statutes before the 2010 amendment. *Compare* § 22-11-31(D) (1979, 1981), *and* (B) (1984, 198, 1991, 1999), *with* § 22-11-31(B) (2010).

**{22}** It is unclear how Retirees calculate the loss in value of their retirement benefit when they claim that a retiree whose COLA is reduced twenty percent and who receives an "Annual Gross Pension . . . [of] . . . $15,000" would experience a "Total Loss Over 25 Years . . . [of] . . . $26,092." It is anomalous for these Retirees to argue that they have a vested right to a COLA that would continually increase at a calculable rate over time, allowing for an estimate of loss, when the COLA adjustment is tied to an index which may decrease, and thus, result in no adjustment for a given year or any number of years. Future economic growth is neither consistent nor dependable, and any adjustment predicated on economic growth is at best indefinite, antithetical to a vested property right.

**{23}** Finally, though we are not bound by, nor required to find persuasive, the analysis of other jurisdictions, our own analysis is not out of step with judicial thinking around the country. *See Maine Ass'n of Retirees v. Bd. of Trs. of Maine Pub. Emps. Ret. Sys.*, 2013 WL 3212360, at *11-12, ___ F. Supp. 2d ___ (D. Me. 2013) (No. 1:12-CV-59-GZS) (there is no substantive right to a COLA where it was not included in the provision defining the substantive benefit, nor did the reduction of a COLA before it was due "actually *reduce* the dollar amount of benefits received"); *see also Levine v. State Teachers Ret. Bd.*, CV-960562830, 1998 WL 46441, *5-6 (Conn. Super. Ct. Jan. 28, 1998) (not reported in A.2d)

8

(modification of a prospective COLA does not impinge upon a public employee's right to his retirement benefit); *Tice v. State of South Dakota*, No. 10-225, at 16-17 (S.D. Cir. Ct. 2012) (unpublished memorandum) (holding there was no contract right guaranteeing a "forever COLA") (not appealed); *Swanson v. State of Minnesota*, No. 62-CV-10-05285, at 26 (Minn. Dist. Ct. June 29, 2011) (unpublished memorandum) (holding there was no property right to a "future adjustment to [an annuity] that may have been greater under the former formula"). These cases are predominately trial court decisions following the recent wave of legislation affecting COLAs, the result of the deteriorating fiscal health of numerous state funds in the wake of the national economic downturn. This issue, however, is pending before the state supreme courts of Colorado, Washington, and Arizona. *See Justus v. State of Colorado*, No. 12SC906, 2013 WL 4008216 (Colo. Aug. 5, 2013) (granting Writ of Certiorari); *Washington Educ. Ass'n v. State Ret. Sys.*, No. 88546-0 (Wash. 2013) (oral argument scheduled for Oct. 24, 2013); *Hon. Fields v. Elected Officials Ret. Plan*, No. CV-13-0005-T/AP (Ariz. 2013) (oral argument scheduled for June 4, 2013). Under federal law, the U.S. Court of Appeals for the Federal Circuit held that "the government [was] not required to provide a particular COLA benefit." *Zucker v. U.S.*, 758 F.2d 637, 640 (Fed. Cir. 1985) ("The COLA portion [of the retirement benefit] until received by way of an increased annuity is nothing more than a 'government fostered expectation' that retirees will be provided retirement annuities which will not be ravaged by inflation. Such an 'expectation' does not rise to the level of 'property' protected by the takings clause." (citation omitted)).

**{24}** We hold, therefore, that in the absence of any contrary indication from our Legislature, any future cost-of-living adjustment to a retirement benefit is merely a year-to-year expectation that, until paid, does not create a property right under the Constitution. Once paid, of course, the COLA by statute becomes part of the retirement benefit and a property right subject to those constitutional protections.

**CONCLUSION**

**{25}** During the 2013 session, the New Mexico Legislature lawfully passed SB 115, which does not infringe on Retirees' constitutional rights. Accordingly, we deny the request for a writ of mandamus.

**{26}** **IT IS SO ORDERED.**

_____
    **RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

_____

9

**EDWARD L. CHÁVEZ, Justice**

_____

**CHARLES W. DANIELS, Justice**

_____

**BARBARA J. VIGIL, Justice**

**Topic Index for _Bartlett v. Cameron_, No. 34,210**

**CONSTITUTIONAL LAW**
Due Process
New Mexico Constitution, General

**EMPLOYMENT LAW**
Health, Pension, and Retirement Benefits

**GOVERNMENT**
Education and Schools
Public Employee

**PROPERTY LAW**
Vested Rights

**REMEDIES**
Writ of Mandamus

**STATUTES**
Constitutionality
Interpretation
Legislative Intent