The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: January 10, 2022

**NO. S-1-SC-38247**

**CITIZENS FOR FAIR RATES
AND THE ENVIRONMENT, and
NEW ENERGY ECONOMY, INC.,**

      Appellants,

v.

**NEW MEXICO PUBLIC REGULATION COMMISSION,**

      Appellee,

and

**PUBLIC SERVICE COMPANY OF NEW MEXICO,
WESTERN RESOURCE ADVOCATES,
COALITION FOR CLEAN AFFORDABLE ENERGY,
and SIERRA CLUB,**

      Intervenors-Appellees.

**In the Matter of Public Service Company
of New Mexico's Abandonment of
San Juan Generating Station Units 1 and 4,
NMPRC Case No. 19-00018-UT.**

**APPEAL FROM THE NEW MEXICO PUBLIC REGULATION COMMISSION**

Freedman Boyd Hollander Goldberg Urias & Ward, P.A.
John Warwick Boyd, Esq.
Albuquerque, NM

for Appellant Citizens for Fair Rates & the Environment

New Energy Economy, Inc.
Mariel Nanasi, Esq.
Santa Fe, NM

for Appellant New Energy Economy, Inc.

Public Regulation Commission
Michael C. Smith, Acting General Counsel
Santa Fe, NM

for Appellee

Western Resource Advocates
Steven S. Michel
Cydney Beadles
Santa Fe, NM

Keleher & McLeod, P.A.
Thomas C. Bird
Albuquerque, NM

for Intervenor-Appellee Western Resources Advocates

PNM Resources, Inc.
Stacey J. Goodwin
Ryan T. Jerman
Albuquerque, NM

Miller Stratvert P.A.

Richard L. Alvidrez
Samantha Kelly
Albuquerque, NM

for Intervenor-Appellee Public Service Company of New Mexico

Jason A. Marks Law, LLC
Jason A. Marks
Albuquerque, NM

Sierra Club
Matthew Gerhart
Denver, CO

for Intervenor-Appellee Sierra Club

Stephanie L. Dzur
Albuquerque, NM

for Intervenor-Appellee Coalition for Clean Affordable Energy

**OPINION**

**THOMSON, Justice.**

## I.      INTRODUCTION

{1}      In *State ex rel. Egolf v. New Mexico Public Regulation Commission*, 2020-NMSC-018, ¶ 32, 476 P.3d 896, we reaffirmed that the authority of the New Mexico Public Regulation Commission "goes no further than what has been statutorily authorized," and we directed the Commission to apply the Energy Transition Act (ETA), NMSA 1978, §§ 62-18-1 to -23 (2019), to proceedings relating to Public Service Company of New Mexico's (PNM) planned abandonment of its interests in the San Juan Generating Station (San Juan) Units One and Four, *Egolf*, 2020-NMSC-018, ¶¶ 1-2, 33. We now address an appeal from the Commission's final order on PNM's request for a financing order in connection with those abandonment proceedings in Case. No. 19-00018-UT (April 1, 2020 final order).

{2}      This appeal is brought by Citizens for Fair Rates and the Environment and New Energy Economy, Inc., two organizations that represent energy consumers who intervened in the administrative proceedings below. For ease of reference and reader comprehension, we hereinafter refer to both organizations in the singular as "New Energy." New Energy raises several issues for our review, most of which attack the ETA on constitutional grounds. In addition to these constitutional challenges, New

Energy also raises a single claim of error in the findings of the Commission relating to the requirement that PNM submit a "memorandum . . . from a securities firm" in support of its application for a financing order. Section 62-18-4(B)(5).

{3}     For the reasons we explain herein, we decline to reach two of New Energy's issues because they are not properly before the Court and are not essential to our disposition of this appeal. Therefore, we express no opinion on the Commission's statutory authority to review and disallow recovery of a utility's "actual final energy transition costs" in the ratemaking proceedings contemplated by Section 62-18-4(B)(10) and Section 62-18-5(F)(8). We further decline to address New Energy's arguments regarding an invasion of judicial powers under Section 62-18-8(B) and Section 62-18-22.

{4}     With respect to the issues we deem properly presented and herein address, we reject New Energy's constitutional challenges to the ETA. We likewise conclude that the Commission's final order is based on a reasonable construction of Section 62-18-4(B)(5) and is supported by substantial evidence. Accordingly, we affirm the Commission's final order. *See* NMSA 1978, § 62-11-5 (1982) ("The [S]upreme [C]ourt shall have no power to modify the [Commission's] action or order appealed from, but shall either affirm or annul and vacate the same.").

## II.    BACKGROUND

{5}    As the matter before this Court is primarily a facial challenge to the constitutionality of the ETA, we begin with a short overview of the challenged Act. We then summarize the proceedings that are relevant to this appeal.

{6}    The ETA comprises the most significant part of Senate Bill 489, a 2019 legislative enactment with various measures designed to support New Mexico's renewable portfolio standard. 2019 N.M. Laws, ch. 65, §§ 1 to 23 (enacting the ETA); *see* NMSA 1978, § 62-16-4 (2014, as amended 2019) (setting forth the requirements of public utilities under New Mexico's renewable portfolio standard). Of particular relevance to this dispute, the ETA provides a means whereby a qualifying public utility in New Mexico may finance, through securitization, the "energy transition cost[s]" associated with abandoning a coal-fired generating facility. Section 62-18-2(H), (S). These potentially securitized energy transition costs may include "financing costs," § 62-18-2(H)(1), and up to $375 million in "abandonment costs," § 62-18-2(H)(2)(a)-(d). These energy transition costs also include anticipated payments into three state-administered funds that will assist various communities affected by the facility's abandonment. *See* § 62-18-16(A), (D), (G).

{7} If a utility desires to securitize these energy transition costs, it may apply to the Commission for a "financing order" that will "authorize[] the issuance of energy transition bonds" in the amount of the utility's estimated costs. Section 62-18-2(K), (L). The financing order will also authorize the utility to collect from its customers a separate "energy transition charge" in repayment of these bonds. Sections 62-18-2(L), (P), 62-18-6(A), 62-18-10. In language only regulators can appreciate, the ETA provides that these energy transition charges are "non-bypassable," meaning that energy consumers receiving electric services from the utility will not be able to avoid paying the charge "for as long as the energy transition bonds . . . are outstanding and the related financing costs have not been recovered in full." Section 62-18-2(P).

{8} A utility that wishes to obtain a financing order from the Commission must submit an application with several estimates, supporting documents, and other specified information as identified in Section 62-18-4, including "a memorandum with supporting exhibits from a securities firm" attesting to the proposed energy transition bonds' AAA rating, § 62-18-4(B)(5). The Commission is required to "issue a financing order approving the application if the [C]ommission finds that the qualifying utility's application for the financing order complies with the requirements of" Section 62-18-4. Section 62-18-5(E). Once issued, "[a] financing order is irrevocable and the [C]ommission shall not reduce, impair, postpone or

4

terminate the energy transition charges approved in the financing order . . . ." Section 62-18-7(A). However, the Commission will continue to supervise the energy transition charges and may approve adjustments "to correct for any over-collection or under-collection" of the charges. Section 62-18-6(B). The Commission must also approve a "ratemaking process to reconcile and recover or refund any difference between the energy transition costs financed by the energy transition bonds and the actual final energy transition costs incurred by the qualifying utility." Sections 62-18-4(B)(10), 62-18-5(F)(8).

{9}     The current appeal is from PNM's application for a financing order in connection with the planned abandonment of its interests in San Juan Units One and Four. *See* Case No. 19-00018-UT. In *Egolf*, 2020-NMSC-018, we concluded that the Commission did not lawfully initiate the proceedings in Case No. 19-00018-UT to compel PNM to abandon San Juan because, at the relevant time, "no statute grant[ed] the Commission authority to compel a public utility to file an abandonment application." *Egolf*, 2020-NMSC-018, ¶ 26. Because abandonment proceedings for San Juan had not lawfully commenced prior to the enactment of the ETA, we issued a writ of mandamus to the Commission, explaining that "the Commission had a nondiscretionary duty to apply the ETA" to the abandonment proceedings

5

subsequently initiated by PNM in Case No. 19-00195-UT. *Egolf*, 2020-NMSC-018, ¶¶ 2, 16, 33.

{10} On remand, the Commission vacated any order in Case Nos. 19-00018-UT and 19-00195-UT determined to be inconsistent with the writ issued by this Court and properly considered PNM's application under the ETA. Shortly thereafter, the hearing examiners issued a recommended decision extensively reviewing the law, arguments, and evidence presented in support of and against PNM's application. The hearing examiners recommended that the Commission approve PNM's application, with several modifications to the terms and language of the financing order as proposed by PNM. The Commission subsequently rejected filed exceptions to the recommended decision and adopted the findings, conclusions, and orders of the recommended decision in its final order.

{11} As a result, the Commission gave leave for PNM to issue energy transition bonds of up to $361 million in connection with the abandonment of its interests in San Juan Units One and Four and to collect separate and non-bypassable energy transition charges from its customers in repayment of the bonds. New Energy timely filed a notice of appeal of the Commission's final order, raising several questions for our review. We summarize specific findings and conclusions from the hearing

6

examiners' recommended decision and the Commission's final order as relevant to the issues in our discussion below.

## III.   STANDARD OF REVIEW

{12}   "Generally speaking, we review the [Commission's] determinations to decide whether they are arbitrary and capricious, not supported by substantial evidence, outside the scope of the agency's authority, or otherwise inconsistent with law, with the burden on the appellant to make this showing." *New Energy Econ., Inc. v. N.M. Pub. Regul. Comm'n*, 2018-NMSC-024, ¶ 24, 416 P.3d 277 (internal quotation marks and citation omitted). We further refine this general standard of review based upon the nature of the question presented. *Id.* In this case, we are tasked with review of the factual findings of the Commission, questions of statutory construction, and numerous constitutional challenges to the ETA.

{13}   In reviewing challenges to the factual findings of the Commission, we will affirm the Commission's order if it is "supported by substantial evidence," which is "evidence that is credible in light of the whole record and that is sufficient for a reasonable mind to accept as adequate to support the conclusion reached by the agency." *N.M Indus. Energy Consumers v. N.M. Pub. Regul. Comm'n*, 2019-NMSC-015, ¶ 8, 450 P.3d 393 (internal quotation marks and citation omitted).

{14}     On review of an issue of statutory construction, we "will begin by according some deference to the agency's interpretation" of its governing statute. *Morningstar Water Users Ass'n v. N.M. Pub. Util. Comm'n*, 1995-NMSC-062, ¶ 11, 120 N.M. 579, 904 P.2d 28. However, "statutory construction itself is not a matter within the purview of the Commission's expertise," and we will "afford little, if any, deference to the Commission" on questions that do not implicate "agency expertise or the determination of fundamental policies within the scope of the agency's statutory function." *N.M. Indus. Energy Consumers v. N.M. Pub. Regul. Comm'n*, 2007-NMSC-053, ¶ 19, 142 N.M. 533, 168 P.3d 105 (internal quotation marks and citations omitted). We will reverse the Commission's statutory interpretation "if it is unreasonable or unlawful." *Id.*

{15}     We review constitutional challenges to a statute de novo, and "[w]e will uphold a statute unless we are satisfied beyond all reasonable doubt that the Legislature went outside the bounds fixed by the Constitution in enacting the challenged legislation." *Bounds v. State ex rel. D'Antonio*, 2013-NMSC-037, ¶ 11, 306 P.3d 457 (internal quotation marks and citation omitted). "We do not inquire into the wisdom or policy of an act of the Legislature . . . , and the burden of establishing that the statute is invalid rests on the party challenging the constitutionality of the statute." *Id.* (internal quotation marks and citations omitted).

8

In a facial challenge to a statute, like many of the challenges New Energy raises here, "we consider only the text of the statute itself, not its application." *Id.* ¶ 14 (brackets, internal quotation marks, and citation omitted). But "in an as-applied challenge, we consider the facts of the case to determine whether application of the statute even if facially valid deprived the challenger of a protected right." *Id.* (brackets, internal quotation marks, and citation omitted).

## IV. DISCUSSION

{16} We turn now to the various issues raised in this appeal. We begin with a discussion of our subject matter jurisdiction over the constitutional challenges raised by New Energy. We decline to reach two of these challenges because the issues are not properly presented for our review. Next, we consider and reject each of New Energy's remaining constitutional challenges to the ETA. We then address the single claim of error raised about the Commission's final order. In the end, we affirm the Commission's final order.

### A. Subject Matter Jurisdiction over Constitutional Challenges

{17} As previously mentioned, New Energy alleges one error in the findings of the Commission's final order. New Energy also raises several constitutional challenges to the ETA. However, the Commission did not reach New Energy's constitutional challenges in the proceedings below, concluding that New Energy's "facial

9

challenges to the constitutionality of the ETA are not properly raised before the Commission and should be or have been taken to district court, which is vested with original jurisdiction over such claims under the New Mexico Constitution."

{18} Now in its briefing on appeal, the Commission asserts that New Energy has not contested "the Commission's ruling that it lacked jurisdiction to address and rule on [New Energy's] facial constitutional challenges to the ETA." The Commission's response brief therefore "does not address the issue presented by [New Energy] concerning whether [New Energy] may properly raise [its] constitutional challenges on appeal rather than through a district court action." Thus, the Commission suggests that this Court should similarly decline to reach New Energy's constitutional challenges on appeal, in apparent recognition of the Commission's rulings on subject matter jurisdiction in the final order.

{19} Although the Commission does not clearly identify which legal doctrine supports its argument on appeal, we assess that the Commission relies on the reasoned basis rule of administrative law. The reasoned basis rule holds that, generally, a reviewing court should not "supply a reasoned basis for the agency's action that the agency itself has not given." *Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶¶ 11-13, 133 N.M. 97, 61 P.3d 806 (internal quotation marks and citation omitted). However, we must emphasize that

10

the Commission's conclusions about subject matter jurisdiction do not provide a reasoned basis to which this Court will defer. While we generally will not supply a rationale for a decision that an administrative agency has not itself given, "it is the function of the courts to interpret the law," and we are "in no way bound by the agency's legal interpretation." *Id.* ¶ 13 (internal quotation marks and citation omitted). The Commission's conclusions with respect to subject matter jurisdiction are legal interpretations which neither limit nor affect this Court's jurisdiction over the issues on appeal.

{20} Nevertheless, the Commission's brief questions the extent of our subject matter jurisdiction over this appeal. Rule 12-321(B)(1) NMRA recognizes that "[s]ubject matter jurisdiction of the trial or appellate court may be raised at any time." We therefore take this opportunity to clarify our subject matter jurisdiction over the questions presented.

{21} We acknowledge that the Commission rightly concluded that it lacked subject matter jurisdiction over New Energy's constitutional challenges. The Commission is an administrative agency "created by statute, and limited to the power and authority expressly granted or necessarily implied by those statutes." *Qwest Corp. v. N.M. Pub. Regul. Comm'n*, 2006-NMSC-042, ¶ 20, 140 N.M. 440, 143 P.3d 478; *see also N.M. Elec. Serv. Co. v. N.M. Pub. Serv. Comm'n*, 1970-NMSC-097, ¶ 4, 81

11

N.M. 683, 472 P.2d 648 ("[The Commission] is created by statute and must therefore find its authority and jurisdiction conferred upon it either expressly or by necessary implication from the same statutory authority."). It is certainly appropriate for an administrative agency to evaluate the constitutionality of proposed agency action. *See Schuster v. N.M. Dep't of Tax'n & Revenue, Motor Vehicle Div.*, 2012-NMSC-025, ¶¶ 18, 22, 283 P.3d 288 (holding that the Motor Vehicle Division (MVD) must determine that a driver's arrest was constitutional as a precondition to revoking the driver's license). However, agencies lack "subject matter jurisdiction to consider matters beyond the scope of the statute" and cannot rule on constitutional challenges to an enactment. *Maso v. N.M. Tax'n & Revenue Dep't*, 2004-NMCA-025, ¶¶ 2, 12, 135 N.M. 152, 85 P.3d 276 (concluding that MVD lacked subject matter jurisdiction over a due process challenge to the sufficiency of the notice provided pursuant to an enactment), *aff'd*, 2004-NMSC-028, ¶ 1, 136 N.M. 161, 96 P.3d 286; *Montez v. J & B Radiator, Inc.*, 1989-NMCA-060, ¶ 7, 108 N.M. 752, 779 P.2d 129 ("An administrative agency does not have the authority to determine the constitutionality of a statutory enactment."). We note, however, that even though an agency has "no authority to rule a statute unconstitutional," we nevertheless "see advantages in requiring the parties to raise constitutional issues in the [administrative] proceedings." *Chevron Res. v. N.M. Superintendent of Ins.*, 1992-NMCA-081, ¶ 19,

12

114 N.M. 371, 838 P.2d 988. Here, New Energy appropriately raised its constitutional challenges in the Commission's proceedings.

{22}   Regarding the proper venue for these challenges, we also agree with the Commission that, in general, constitutional challenges to a legislative enactment may be brought in a declaratory action under the original jurisdiction of the district court, N.M. Const. art. VI, § 13. *See* NMSA 1978, §§ 44-6-1 to -15 (1975) (Declaratory Judgment Act); *see also Am. Fed'n of State, Cnty. & Mun. Emps. v. Bd. of Cnty. Comm'rs of Bernalillo Cnty.* (*AFSCME*), 2016-NMSC-017, ¶¶ 9, 17, 34, 373 P.3d 989 (requiring a party bringing a declaratory judgment action to satisfy the "jurisdictional prerequisites" of ripeness and standing). However, the district court's jurisdiction over these challenges is not exclusive. For example, this Court may exercise its original jurisdiction, such as in mandamus or superintending control, concurrently with the original jurisdiction of the district court. *See* N.M. Const. art. VI, §§ 3, 13; *State ex rel. Sandel v. N.M. Pub. Util. Comm'n*, 1999-NMSC-019, ¶¶ 10-11, 127 N.M. 272, 980 P.2d 55 (discussing this Court's mandamus jurisdiction as concurrent to that of the district court); *Cnty. of Bernalillo v. N.M. Pub. Regul. Comm'n*, 2000-NMSC-035, ¶ 5, 129 N.M. 787, 14 P.3d 525 (construing a challenge to a Commission order which had not been properly raised on appeal as a petition for mandamus). Such an extraordinary proceeding would be inappropriate in this

13

case because New Energy's challenges do not "implicate . . . fundamental constitutional question[s] of great public importance" and thus are "not properly the subject of mandamus and do[] not justify our exercise of original jurisdiction." *Cnty. of Bernalillo*, 2000-NMSC-035, ¶ 20.

{23} Subject matter jurisdiction over New Energy's challenges also exists pursuant to the appellate jurisdiction granted to this Court by the ETA itself in Section 62-18-8(B). In *Smith v. City of Santa Fe*, 2007-NMSC-055, ¶ 15, 142 N.M. 786, 171 P.3d 300, we "caution[ed] against using a declaratory judgment action to challenge or review administrative actions if such an approach would . . . disregard an exclusive statutory scheme for the review of administrative decisions." *See also State ex rel. Regents of E.N.M. Univ. v. Baca*, 2008-NMSC-047, ¶ 22, 144 N.M. 530, 189 P.3d 663 (concluding that a party to administrative proceedings who also could bring a declaratory action should be "obligated either to pursue its right to judicial review [of the administrative decision] or to file its declaratory judgment action in compliance with the procedures for administrative appeal"). We conclude that Section 62-18-8(B) creates an exclusive statutory scheme for appellate review.

{24} The Legislature has provided a right of direct appeal to this Court from Commission orders under the ETA and has expressed an intent that such appeals be heard and determined "as expeditiously as practicable." Section 62-18-8(B). That

14

clearly stated legislative intent, as well as the principles of sound judicial administration that motivated our decision in *Smith*, compel us to conclude that we should entertain New Energy's preserved constitutional challenges to the ETA. As in *Smith*, "[w]e perceive no sound judicial policy for allowing [New Energy] to forego an available avenue of judicial review [of those challenges,] only to allow [New Energy] to initiate judicial review in another form at some future date that no one can predict or rely upon with any certainty." *Smith*, 2007-NMSC-055, ¶ 24. Requiring New Energy to pursue what would essentially amount to a collateral attack upon the Commission's final order by initiating a declaratory judgment action in the district court would only "invite chaos and preclude certainty," *id.* ¶ 23, in clear contravention of the Legislature's stated intent for an expeditious resolution to appeals from financing orders under the ETA. Section 62-18-8(B).

{25} While we accept jurisdiction over this appeal, we nonetheless apply the same principles of sound judicial administration regarding the propriety of the issues raised. Thus, we decline to reach two issues that we conclude are improperly positioned for our review: one out of a concern for finality, and the other because of the lack of any real controversy and inadequate briefing on the issue.

15

**1.    The Commission's ratemaking authority under the ETA**

{26}    The first issue that we conclude is not presently well-postured for our review involves the extent of the Commission's authority in the ratemaking processes contemplated by the ETA "to reconcile and recover or refund any difference between the energy transition costs financed by the energy transition bonds and the actual final energy transition costs incurred" by the utility. Section 62-18-4(B)(10); *see* § 62-18-5(F)(8). More particularly, New Energy and the other parties to this appeal dispute whether the Commission retains authority to review and disallow any of the actual final energy transition costs that a utility may incur after January 1, 2019. New Energy argues that the ETA strips the Commission of authority to conduct a review or to disallow any of these energy transition costs. The Commission and PNM disagree. They point out that the final order concludes that the Commission will have the statutory authority to review and potentially disallow PNM's final expenditures by adjusting PNM's base rates. Several of New Energy's challenges dispute this finding and attack the other parties' construction of the ETA. However, we conclude that this debate is neither ripe for our review nor essential to our disposition of this appeal.

{27}    "Decisions of administrative entities are fit for review only when the agency's decision is final." *AFSCME*, 2016-NMSC-017, ¶ 21. "This proposition serves to

16

prevent judicial interference until an administrative decision has been formalized and finalized and its effects felt in a concrete way by the parties. Moreover, the proposition serves an important role in preserving separation of powers." *Id.* (internal quotation marks and citation omitted). The Commission's final order indicates that it intends to review and *potentially* disallow PNM's finally incurred energy transition costs in future ratemaking proceedings. However, to our knowledge, this review has not yet occurred. The Commission also has not yet disallowed any of PNM's post-January 1, 2019 energy transition costs. We do not believe that the Court can effectively consider the lawfulness of a *potential* disallowance in the absence of a relevant record. *Cf. N.M. Indus. Energy Consumers v. N.M. Pub. Serv. Comm'n*, 1991-NMSC-018, ¶¶ 24, 41, 111 N.M. 622, 808 P.2d 592 (declining to review a Commission order because "the Commission has not yet determined if and to what extent investment in any plant is imprudent, or how imprudence would effect its rate treatment" and because the Commission "has not, by its actions in this case, determined that ratepayers must pay for imprudent investment"). Any dispute about the extent of the Commission's authority in the proceedings contemplated by Sections 62-18-4(B)(10) and 62-18-5(F)(8) would require this Court to set out an advisory opinion, as well as to construe the ETA in

17

light of other relevant considerations of New Mexico public utility law. We will not undertake such an extensive review today.

{28} In addition, there is no hardship in deferring ruling upon the unripe challenge to the Commission's ratemaking authority with respect to PNM's yet-to-be-incurred expenditures. *See AFSCME*, 2016-NMSC-017, ¶ 28 ("The second step in the ripeness analysis is whether, and to what extent, the parties will endure hardship if a decision is withheld."). We have explained that "the judicial power to resolve disputes in a government built upon a foundation separating the legislative, executive, and judicial functions should be guided by prudential considerations" and that the "prudential rules of judicial self-governance, like standing, ripeness, and mootness, are founded in [a] concern about the proper—and properly limited—role of courts in a democratic society and are always relevant concerns." *New Energy Econ. Inc. v. Shoobridge*, 2010-NMSC-049, ¶ 16, 149 N.M. 42, 243 P.3d 746 (internal quotation marks and citation omitted). We therefore decline to address the Commission's authority in the ratemaking proceedings contemplated under Sections 62-18-4(B)(10) and 62-18-5(F)(8).

**2. Concerns regarding the ETA's appeal process**

{29} New Energy also attacks the ETA's ten-day time limit for filing a notice of appeal and the statute indicating that "if any provision of [the ETA] is invalidated,

18

. . . that occurrence shall not affect the validity of any action allowed pursuant to [the ETA]." Section 62-18-22; *see also* § 62-18-8(B). New Energy argues that these sections improperly constrain meaningful judicial review and thus violate separation of powers, N.M. Const. art. III, § 1; N.M. Const. art. VI, § 1. However, New Energy did not adequately develop these arguments in its briefing on appeal, and we will not review inadequately briefed issues. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not review unclear arguments . . . . To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them. This creates a strain on judicial resources and a substantial risk of error" (internal quotation marks and citations omitted)).

{30} We also do not believe that resolution of New Energy's inadequately briefed challenges to Sections 62-18-8(B) and 62-18-22 is essential to the disposition of this appeal. Having timely filed a notice of appeal within ten days of the Commission's final order, New Energy has not alleged any injury regarding the time limit of Section 62-18-8(B). Nor are we confronted with the perplexing problem of the "validity of any action . . . [if the Act] is held to be invalid," § 62-18-22, as we here affirm the Commission's final order and recognize the validity of its actions taken pursuant to the ETA. "It is an enduring principle of constitutional jurisprudence that

19

courts will avoid deciding constitutional questions unless required to do so." *Schlieter v. Carlos*, 1989-NMSC-037, ¶ 13, 108 N.M. 507, 775 P.2d 709. We therefore decline to reach these challenges as a matter of sound judicial administration and turn to the remaining issues before the Court.

**B.**     **New Energy's Challenges to the ETA**

{31}     Having answered the question regarding our jurisdiction and established the scope of our review, we next consider the merits of New Energy's remaining arguments. We first address New Energy's constitutional challenges to the ETA and then consider the single claim of error presented. As explained below, we conclude that each of these issues lacks merit and affirm the Commission's final order.

**1.**     **Due process**

{32}     New Energy first argues that the ETA deprives energy consumers of due process by allowing a qualifying public utility to recover its energy transition costs without Commission oversight. We consider, and reject, New Energy's arguments on both procedural due process and substantive due process grounds.

**a.**     **Procedural due process**

{33}     "Before a procedural due process claim may be asserted, [a challenger to the legislation] must establish that [the challenger] was deprived of a legitimate liberty or property interest and that [the challenger] was not afforded adequate procedural

20

protections in connection with the deprivation." *Bd. of Educ. of Carlsbad Mun. Schs. v. Harrell*, 1994-NMSC-096, ¶ 21, 118 N.M. 470, 882 P.2d 511. "Procedural due process requirements are not static, and the extent of the hearing required is determined on a case by case basis." *Mills v. N.M. State Bd. of Psych. Exam'rs*, 1997-NMSC-028, ¶ 19, 123 N.M. 421, 941 P.2d 502. In determining what process is due in an administrative hearing, we balance

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Albuquerque Bernalillo Cnty. Water Util. Auth. v. N.M. Pub. Regul. Comm'n* (*ABCWUA*), 2010-NMSC-013, ¶ 28, 148 N.M. 21, 229 P.3d 494 (brackets, internal quotation marks, and citations omitted).

{34} In order to claim the protections of the due process clause, an opponent must possess a cognizable property or liberty interest. *Harrell*, 1994-NMSC-096, ¶ 21. "Protected property interests are those to which an individual has a claim of entitlement." *Mills*, 1997-NMSC-028, ¶ 15. Energy consumers generally do not possess a claim of entitlement to utility property or a right to any fixed utility rate. *See State v. Mountain States Tel. & Tel. Co.*, 1950-NMSC-055, ¶¶ 13-24, 54 N.M.

21

315, 224 P.2d 155 ("[I]t is generally held . . . that the remedy of the public is an appeal to the legislature or its delegated authority for redress or protection against unreasonably high rates. The theory is that the legislature is acting for the people; and that no property right is involved." (citations omitted)); *Gas Co. of N.M. v. N.M. Pub. Serv. Comm'n* (*Gas Co. v. PSC*), 1984-NMSC-002, ¶ 13, 100 N.M. 740, 676 P.2d 817 ("[A] utility customer is not a partner or beneficiary of the utility. . . . By paying bills for service [customers] do not acquire any interest, legal or equitable, in the property used for their convenience or in the funds of the company." (internal quotation marks and citation omitted)); *see also Wright v. Cent. Ky. Nat. Gas Co.*, 297 U.S. 537, 542 (1936) ("[W]e find no warrant for a conclusion that appellants had any vested right which precluded the city from effecting a reasonable adjustment of the controversy over rates . . . . In making that settlement, . . . the consumers were represented by the city.").

{35}     However, we have recognized that NMSA 1978, Section 62-3-1(B) (2008) accords to energy consumers an entitlement to "reasonable and proper service at fair, just and reasonable rates." *ABCWUA*, 2010-NMSC-013, ¶ 30 (internal quotation marks and citation omitted); *see also Mountain States Tel. & Tel.*, 1950-NMSC-055, ¶ 25 ("There are statutes, however, which provide that customers of public service corporations or others may appeal to the courts for determination of the

22

reasonableness of rates."). In light of this statutorily created interest, we have explained that energy consumers are entitled to "reasonable notice and opportunity to be heard and present any claim or defense" in proceedings before the Commission. *ABCWUA*, 2010-NMSC-013, ¶ 21 (internal quotation marks and citation omitted).

{36} The ETA provides that "[t]he [C]ommission may approve an application for a financing order without a formal hearing if no protest establishing good cause for a formal hearing is filed within thirty days of . . . when notice is given of the filing." Section 62-18-5(A). While Section 62-18-5(A) is not a model of clarity, the ETA as written contemplates that energy consumers will be given sufficient notice of the utility's application and a meaningful opportunity to be heard upon lodging a "protest establishing good cause for a formal hearing" in front of the Commission. *Id.* In the language of the ETA, we see nothing discordant with the procedural requirements of due process. In fact, New Energy and several other objecting parties representing the rights of energy consumers participated extensively in these abandonment proceedings and presented various claims and defenses. As such, we reject New Energy's procedural due process challenge to the ETA.

**b.    Substantive due process**

{37} New Energy contends that hearings held pursuant to the ETA will not provide energy consumers with a meaningful opportunity to be heard because the

23

Commission's findings will be limited to the elements defined in the ETA. More particularly, Section 62-18-4 sets forth a specific list of supporting documents—cost estimates and other information—that a qualifying public utility must provide in support of its application for a financing order. Section 62-18-5(E) provides that the Commission "shall issue a financing order approving the application if the [C]ommission finds that the qualifying utility's application for the financing order complies with the requirements" of Section 62-18-4. New Energy argues that the ETA does not permit the Commission to review a utility's estimated energy transition costs before issuing a financing order, and that this supposed limitation on the Commission's authority violates due process and equal protection.

{38}     To the extent that New Energy challenges the adequacy of the elements that the Commission must find before approving a utility's application under the ETA, New Energy's due process challenge to the Act is not procedural, but a challenge to the substance of the Act itself. *Cf. Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7-8 (2003) (explaining that a defendant who argued that he was entitled to due process to determine a fact not material to a statute did not bring a viable challenge on procedural due process grounds, but on substantive due process grounds); *State v. Druktenis*, 2004-NMCA-032, ¶¶ 47-48, 135 N.M. 223, 86 P.3d 1050 (same). We thus analyze New Energy's challenge under substantive due process standards.

{39} As pertinent to the correct standard of review, we note that the ETA is "economic regulation" that does not implicate important or fundamental rights. *Pub. Serv. Co. of N.M. v. N.M. Pub. Serv. Comm'n*, 1991-NMSC-083, ¶¶ 25-27, 112 N.M. 379, 815 P.2d 1169. We therefore review New Energy's substantive due process challenge to the ETA using a rational basis standard. *See Rodriguez v. Brand W. Dairy*, 2016-NMSC-029, ¶ 23, 378 P.3d 13 ("Rational basis review applies to general . . . economic legislation that does not affect a fundamental or important constitutional right or a suspect or sensitive class." (internal quotation marks and citation omitted)). "Under rational basis review, the challenger must demonstrate that the legislation is not rationally related to a legitimate government purpose." *Id.* In reviewing substantive due process challenges under the United States Constitution, we follow the federal rational basis test "which only requires a reviewing court to divine the *existence* of a conceivable rational basis to uphold legislation against a constitutional challenge." *Id.* ¶ 26 (internal quotation marks and citation omitted).

{40} However, we apply a modified rational basis standard in reviewing substantive due process challenges under the New Mexico Constitution, as we are "cognizant of our constitutional duty to protect discrete groups of New Mexicans from arbitrary discrimination by political majorities and powerful special interests."

*Id.* ¶ 27. "To successfully challenge the statute under this standard of review, [the challenger] must demonstrate that . . . the legislation is not supported by a 'firm legal rationale' or evidence in the record." *Wagner v. AGW Consultants*, 2005-NMSC-016, ¶ 24, 137 N.M. 734, 114 P.3d 1050. "In practical terms, our rational basis standard requires the challenger to bring forward record evidence, legislative facts, judicially noticeable materials, case law, or legal argument to prove that the [challenged legislation] is . . . not rationally related to the articulated legitimate government purposes." *Rodriguez*, 2016-NMSC-029, ¶ 28. We conclude that New Energy has not met this initial burden of persuasion.

{41} New Energy primarily challenges the ETA because the Act is unlike other public utility legislation and undoes the "regulatory compact" with respect to a utility's energy transition costs by giving a utility "what is anathema to utility law[:] the right to name its price." As noted previously, we do not opine on the supposed deregulatory effect of the ETA, or the Legislature's policy choices in this regard. *See* paragraphs 26-28, *supra*. But we fully disagree with New Energy's assertion that the challenged legislation lacks a rational basis simply because the legislation is unique relative to other utility legislation or because it requires the Commission to issue a financing order once the Commission is satisfied that the utility has met the requirements of the ETA.

26

{42}     The Legislature has declared that it is the "policy of the state" that utilities be regulated so "that reasonable and proper services shall be available at fair, just and reasonable rates" and so "that capital and investment may be encouraged and attracted so as to provide for . . . proper plants and facilities and demand-side resources for the rendition of service to the general public and to industry." Section 62-3-1(B). We have explained that Section 62-3-1(B) expresses an intent to balance the interests of a utility and energy consumers, toward achieving rates that

> are neither unreasonably high so as to unjustly burden ratepayers with excessive rates nor unreasonably low so as to constitute a taking of property without just compensation or a violation of due process by preventing the utility from earning a reasonable rate of return on its investment. We have recognized that there is a significant zone of reasonableness in which rates are neither ratepayer extortion nor utility confiscation.

*Pub. Serv. Co. of N.M. v. N.M. Pub. Regul. Comm'n* (*PNM v. PRC*), 2019-NMSC-012, ¶ 10, 444 P.3d 460 (brackets, internal quotation marks, and citation omitted). In enacting the ETA, the Legislature decided that permitting a public utility to finance the energy transition costs associated with abandoning a coal-fired generating facility in the manner therein provided would promote the legitimate interests reflected in Section 62-3-1(B). New Energy may disagree, as a policy

27

matter, with this legislative decision. But New Energy's policy disagreement does not lay the foundation for judicial interference on substantive due process grounds.

{43} "While our rational basis test is neither toothless nor a rubber stamp for challenged legislation, it nonetheless requires us to defer to the validity of the statute, with the challenger carrying the burden of persuasion." *Wagner*, 2005-NMSC-016, ¶ 24. In addition to New Energy's arguments characterizing the ETA as deregulatory and unprecedented, New Energy also refers us to record testimony expressing uncertainty in the final amount of energy transition charges that consumers may pay because of financing orders potentially issued under the ETA. But the referenced testimony does not persuasively show that the ETA will result in charges beyond the "significant zone of reasonableness in which rates are neither ratepayer extortion nor utility confiscation." *PNM v. PRC*, 2019-NMSC-012, ¶ 10. Thus, we conclude that New Energy has not brought forth sufficient "record evidence, legislative facts, judicially noticeable materials, case law, or legal argument," *Rodriguez*, 2016-NMSC-029, ¶ 28, to establish that the ETA lacks a rational relationship to the interests expressed in Section 62-3-1(B). We therefore defer to the validity of the enactment and reject New Energy's substantive due process challenges to the ETA.

## 2.  Separation of powers: legislative powers

{44}   New Energy next argues that the ETA invades the Commission's "responsibility for regulating public utilities" under Article XI, Section 2 of the New Mexico Constitution by purportedly eliminating the Commission's authority to review and disallow a public utility's energy transition costs for imprudence or unreasonableness. As we discussed in paragraph 27, *supra*, we do not reach the unripe question regarding the extent of the Commission's authority in the ratemaking proceedings contemplated by the ETA. *See* § 62-18-4(B)(10); § 62-18-5(F)(8). Yet, even if we were to accept New Energy's construction of the Act, we would still reject New Energy's separation of powers challenges.

{45}   We once again emphasize that the Commission is constitutionally tasked with the "responsibility for regulating public utilities *as provided by law*." N.M. Const. art. XI, § 2 (emphasis added); *Egolf*, 2020-NMSC-018, ¶ 33 (quoting the 2012 amendment of Article XI, Section 2 of the New Mexico Constitution and noting that "[t]he Commission has a constitutional duty to regulate public utilities 'in such manner as the legislature shall provide'"). Thus, while the New Mexico Constitution delegates to the Commission the exclusive responsibility for carrying out public utility regulatory policy, the parameters of that policy are, in the first instance, for the Legislature to decide. *See, e.g.*, *Egolf*, 2020-NMSC-018, ¶ 33 (explaining that

the discretion to make or modify applicable law "is not within the discretion of the Commission and is instead a function of our Legislature"); *Sandel*, 1999-NMSC-019, ¶ 13 ("The nature and extent of the [Commission's] authority was defined by the Legislature when it enacted and amended the [New Mexico Public Utility Act]."); *City of Albuquerque v. N.M. Pub. Regul. Comm'n*, 2003-NMSC-028, ¶¶ 16-22, 134 N.M. 472, 79 P.3d 297 (discussing the Commission's rulemaking authority as deriving from the Legislature); *accord Duquesne Light Co. v. Barasch*, 488 U.S. 299, 313 (1989) ("We have never doubted that state legislatures are competent bodies to set utility rates.").

{46}     We do not mean to suggest that the Legislature's power to set rates or enact utility legislation is unbounded, as the legislation must still accord with the mandates of the Constitution. "But if the system fails to pass muster, it will not be because the legislature has performed part of the work." *Duquesne Light Co.*, 488 U.S. at 314. We must reject New Energy's separation of powers arguments under Article III, Section 1 and Article XI, Section 2 in light of this fundamental principle of constitutional law.

{47}     New Energy also insists that the Legislature is constitutionally required to confer upon the Commission the authority to disallow, as imprudent, some or all of a utility's energy transition costs. We disagree. "The prudent investment theory

30

provides that ratepayers are not to be charged for negligent, wasteful or improvident expenditures, or for the cost of management decisions which are not made in good faith." *In re Pub. Serv. Co. of N.M.*, 101 P.U.R. 4th 126 (1989). However, the prudent investment theory is but one of many accepted ratemaking methodologies, and we have repeatedly recognized that "[t]he Commission is not bound to the use of any single formula or combination of formulae in determining rates." *PNM v. PRC*, 2019-NMSC-012, ¶ 10 (brackets, internal quotation marks, and citation omitted); *accord Fed. Power Comm'n v. Hope Nat. Gas Co.*, 320 U.S. 591, 601-02 (1944) (recognizing that legislatures may regulate rates under their police powers and that legislatively enabled commissions are "not bound to the use of any single formula or combination of formulae in determining rates"). To the contrary, "[n]o one of the many formulas from time to time used to determine a rate base such as prudent investment . . . is imposed by the Constitution upon the [C]ommission for use in determining rates." *State Corp. Comm'n v. Mountain States Tel. & Tel. Co.*, 1954-NMSC-044, ¶ 19, 58 N.M. 260, 270 P.2d 685; *Duquesne Light Co.*, 488 U.S. at 316 ("The Constitution within broad limits leaves the States free to decide what ratesetting methodology best meets their needs in balancing the interests of the utility and the public.").

**{48}**     We thus reject New Energy's assertion that the Legislature violated separation of powers by failing to explicitly provide for a prudence review under the ETA. As we discussed in paragraph 27, *supra*, we do not reach the unripe question whether such a review is statutorily authorized, but it is apparent that this review is not constitutionally required.

### 3.     Whether the ETA affects rights in a pending case

**{49}**     New Energy next argues that the ETA violates Article IV, Section 34 of the New Mexico Constitution because it affects the rights of energy consumers in a pending case. In support of this challenge, New Energy asserts that the ETA interferes with proceedings relating to San Juan, the Four Corners Generating Station (Four Corners), and the Palo Verde Nuclear Generating Station (Palo Verde). We disagree.

**{50}**     Article IV, Section 34 provides, "No act of the legislature shall affect the right or remedy of either party, or change the rules of evidence or procedure, in any pending case." In *Egolf*, we concluded that the enactment of the ETA did not interfere with a "pending case" with respect to San Juan because "abandonment proceedings can only begin with a public utility's *voluntary* request for abandonment." 2020-NMSC-018, ¶¶ 20, 26. Given that conclusion, we see no violation of Article IV, Section 34 under the arguments New Energy presents here.

The ETA permits "[a] qualifying utility that is abandoning a qualifying generating facility [to] apply to the [C]ommission for a financing order . . . to recover all of its energy transition costs through the issuance of energy transition bonds." Section 62-18-4(A). New Energy has not shown that PNM voluntarily initiated abandonment proceedings for either San Juan, Four Corners, or Palo Verde before the ETA's effective date of June 14, 2019.

{51}    We also do not see any pending case with respect to the Commission's authority under NMSA 1978, Section 62-16-6(C) (2019) of the Renewable Energy Act. Section 62-16-6(C) authorizes the Commission to "require [a] facility to discontinue serving customers within New Mexico" in specified circumstances. New Energy argues that that the ETA interferes with proceedings relating to PNM's non-coal-fired generating facilities, such as Palo Verde, because of the authority conferred by this statute. However, it does not appear that the Commission actually invoked its authority under Section 62-16-6(C) prior to the enactment of the ETA. Indeed, we note that the authority granted in Section 62-16-6(C) was first granted by the very same bill that enacted the ETA. *See* 2019 N.M. Laws, ch. 65, § 31 (amending Section 62-16-6 (2007) and adding the authority granted under Subsection (C)). We fail to see how proceedings relating to Section 62-16-6(C) could be characterized as "pending" at the time of the ETA's enactment.

{52} Thus, as in *Egolf*, we conclude that the ETA does not affect the rights or remedy of any party in a pending case. We therefore reject New Energy's challenge to the ETA under Article IV, Section 34 of the New Mexico Constitution. Our decision in *Egolf*, 2020-NMSC-018, thoroughly and conclusively decided this issue. New Energy's undeveloped and unsupported assertion that this Court improperly decided *Egolf* has not convinced us to reconsider that opinion.

**4.      Whether the ETA impairs contractual or vested rights**

{53} New Energy alleges that the ETA contravenes Article II, Section 19 of the New Mexico Constitution, which provides, "No ex post facto law, bill of attainder nor law impairing the obligation of contracts shall be enacted by the legislature." In support of this challenge, New Energy argues that the ETA impairs (1) the modified stipulation between PNM and the Commission with respect to San Juan, as referenced in *Egolf*, 2020-NMSC-018, ¶ 4; (2) a prior order of the Commission regarding Palo Verde, as reviewed by this Court in *PNM v. PRC*, 2019-NMSC-012; and (3) a decision by the Commission in Case No. 16-00276-UT to defer review of some issues related to Four Corners. New Energy asserts that energy consumers had contractual or vested rights in this stipulation and these Commission decisions and that the ETA improperly interferes with those rights. We disagree.

34

{54}     As an initial step in our analysis under Article II, Section 19, we must determine whether energy consumers possessed either contractual or vested property rights that could have been impaired. *See Pierce v. State*, 1996-NMSC-001, ¶ 17, 121 N.M. 212, 910 P.2d 288 (noting that the "first inquiry in determining" whether a claimant has a cognizable contract clause claim is whether the claimant had "either contractual or vested rights"); *see also Whitely v. N.M. State Pers. Bd.*, 1993-NMSC-019, ¶ 9, 115 N.M. 308, 850 P.2d 1011 ("A prerequisite to a finding that a contract obligation is unconstitutionally impaired is proof of the existence of a contract, the benefits of which are somehow denied to the claimant due to the effect of legislation or other governmental action."). A vested right is defined as "the power to do certain actions or possess certain things lawfully," which "may be created either by common law, by statute, or by contract." *Rubalcava v. Garst*, 1949-NMSC-035, ¶ 10, 53 N.M. 295, 206 P.2d 1154 (internal quotation marks and citation omitted), *superseded in part and remanded for inclusion of indispensable parties*, 1952-NMSC-057, ¶¶ 10-11, 56 N.M. 647, 248 P.2d 207. Such vested rights, when created, are "protected from the invasion of the Legislature by those provisions in the Constitution which apply to such rights." *Rubaclava*, 1949-NMSC-035, ¶ 10.

{55}     Vested rights, however, are "not synonymous with contractual rights." *Pierce*, 1996-NMSC-001, ¶ 17. We note that the stipulation and Commission decisions that

35

New Energy claims conferred contractual rights to consumers were made by the Commission pursuant to its authority under relevant provisions of the New Mexico Public Utility Act, NMSA 1978, §§ 62-1-1 to 62-6-28, 62-8-1 to 62-13-16 (1887, as amended through 2021); *see* § 62-3-3 (specifying "Chapter 62, Articles 1 to 6 and 8 to 13" as the "Public Utility Act"). We do not generally assume that statutes create private rights of a contractual nature, as "this Court presumes that the Legislature is implementing public policy when it enacts a statute, policy which it is free to change in the future." *Bartlett v. Cameron*, 2014-NMSC-002, ¶ 19, 316 P.3d 889; *see also Pierce*, 1996-NMSC-001, ¶ 48 ("We presume that statutes establish current public policy subject to legislative revision rather than creating either contractual or vested rights."). "To presume otherwise would upset the balance of the separation of powers, and affect the Legislature's ability to respond to changing economic conditions." *Bartlett*, 2014-NMSC-002, ¶ 19. Thus, "[c]ontractual rights are not created by statute unless the language of the statute and the circumstances . . . manifest a legislative intent to create private rights of a contractual nature enforceable against the State." *Whitely*, 1993-NMSC-019, ¶ 10 (second alteration in original) (internal quotation marks and citation omitted). Accordingly, "[w]e will not infer a legislative intent to create private rights of a contractual nature enforceable against the State unless the legislative intent [to do so] is clearly and

36

unambiguously stated." *Pierce*, 1996-NMSC-001, ¶ 53 (internal quotation marks and citation omitted).

{56}    New Energy has not shown that energy consumers possessed any cognizable contractual or vested rights in the referenced stipulation or Commission decisions for purposes of Article II, Section 19. New Energy does not identify with any clarity what part of the referenced stipulation or Commission decisions may have conferred contractual or vested rights to consumers. This Court will not scour the voluminous records of the Commission's prior proceedings in an attempt to substantiate New Energy's generalized contentions. *See State v. Torres*, 2005-NMCA-070, ¶ 34, 137 N.M. 607, 113 P.3d 877 ("[I]ssues not argued and supported by authority [are] deemed abandoned."); Rule 12-318(A) NMRA.

{57}    We also will not assume that the referenced stipulation or Commission decisions conferred contractual or vested rights to consumers. As we have discussed, paragraphs 33-34, *supra*, energy consumers generally do not possess rights in utility property or a right to a fixed utility rate. *Mountain States Tel. & Tel.*, 1950-NMSC-055, ¶¶ 13-24; *Gas Co. v. PSC*, 1984-NMSC-002, ¶ 13. Further, we find no indication of a legislative intent to confer either contractual or vested rights to energy consumers in light of the arguments New Energy presents here. Even though we have recognized that Section 62-3-1 reflects energy consumers' entitlement to "fair,

37

just[,] and reasonable rates," *ABCWUA*, 2010-NMSC-013, ¶ 30, this statute does not clearly express an intent to confer contractual or vested rights to energy consumers. Rather, the Public Utility Act embodies the Legislature's declared public policy regarding the availability of a public utility's services. *See* § 62-3-1(B) ("It is the declared policy of the state that the public interest, the interest of consumers and the interest of investors require the regulation and supervision of public utilities . . . ."). The stipulation and Commission decisions to which New Energy refers therefore were made upon statutes embodying current legislative policy with respect to the regulation of public utilities in New Mexico. This was policy that the Legislature was "free to change" by duly enacting the ETA. *Bartlett*, 2014-NMSC-002, ¶ 19.

{58} New Energy therefore has not shown that consumers possessed cognizable contractual or vested rights in any of the referenced stipulation or Commission orders, and we reject New Energy's challenge under Article II, Section 19.

**5. Whether the ETA is log-rolling or hodge-podge legislation**

{59} New Energy argues next that the ETA violates the constitutional prohibition against log-rolling or hodge-podge legislation contained in Article IV, Section 16 of the New Mexico Constitution. We find little merit to these arguments.

{60} Article IV, Section 16 provides, in relevant part, "The subject of every bill shall be clearly expressed in its title, and no bill embracing more than one subject

38

shall be passed except general appropriation bills and bills for the codification or revision of the laws." "We have long held that the test of a statute's constitutional validity under [Article IV,] Section 16 is whether the title fairly gives such reasonable notice of the subject matter of the statute itself as to prevent the mischief intended to be guarded against." *U.S. Brewers Ass'n v. Dir. of N.M. Dep't of Alcoholic Beverage Control*, 1983-NMSC-059, ¶ 11, 100 N.M. 216, 668 P.2d 1093. "The mischief to be prevented [is] hodge-podge or log-rolling legislation, surprise or fraud on the legislature, or not fairly apprising the people of the subjects of legislation so that they would have no opportunity to be heard on the subject." *Martinez v. Jaramillo*, 1974-NMSC-069, ¶ 9, 86 N.M. 506, 525 P.2d 866. We are slow to deem the title of an act insufficient under Article IV, Section 16 as "[t]he objections should be grave, and the conflict between the statute and the constitution palpable." *City of Albuquerque v. Garcia*, 1973-NMSC-036, ¶ 7, 84 N.M. 776, 508 P.2d 585 (internal quotation marks and citation omitted). We do not require the title to provide an index or table of contents of the enactment, and it is sufficient if the title "give[s] notice of the subject matter of the legislation and . . . if, applying every reasonable intendment in favor of its validity, it may be said that the subject of the legislative enactment is expressed in its title." *Gallegos v. Wallace*, 1964-NMSC-

224, ¶ 6, 74 N.M. 760, 398 P.2d 982, *overruled on other grounds by McGeehan v. Bunch*, 1975-NMSC-055, ¶¶ 25-26, 88 N.M. 308, 540 P.2d 238.

{61}   New Energy argues that the ETA violates Article IV, Section 16 because the title of Senate Bill 489 does not fairly apprise the public that the Act essentially deregulates a public utility with respect to its energy transition costs. As noted previously, we do not necessarily agree with New Energy's characterization of the deregulatory effect of the enactment. *See* paragraphs 26-28, *supra*. But even assuming, for the sake of argument, that this was the ETA's effect, we conclude that the title of its bill gives reasonable notice of its subject.

{62}   The ETA was enacted as one part of Senate Bill 489, a bill that contained several measures germane to New Mexico's revised renewable portfolio standard. 2019 N.M. Laws, ch. 65. With respect to those portions describing the ETA, the title of Senate Bill 489 provides that it is

> AN ACT RELATING TO PUBLIC UTILITIES; ENACTING THE ENERGY TRANSITION ACT; AUTHORIZING CERTAIN UTILITIES THAT ABANDON CERTAIN GENERATING FACILITIES TO ISSUE BONDS PURSUANT TO A FINANCING ORDER ISSUED BY THE PUBLIC REGULATION COMMISSION; . . . PROVIDING FOR THE TREATMENT OF ENERGY TRANSITION BONDS BY THE COMMISSION; . . . PROVIDING FOR NONIMPAIRMENT OF ENERGY TRANSITION CHARGES AND BONDS . . . .

2019 N.M. Laws, ch. 65. We conclude that the information in this title provides reasonable notice that the enactment relates to the regulation of public utilities and authorizes the Commission to approve a financing order allowing a public utility to issue bonds for the abandonment of certain generating facilities. The title does not need to outline every detail of the Act, recite the mechanism for issuing the bonds, or index every cost so financed. We therefore deem the title of Senate Bill 489 sufficient under the circumstances and reject New Energy's challenge under Article IV, Section 16.

**6.      Whether the ETA amends other statutes by reference**

{63}      New Energy contends that the ETA improperly amends other sections of New Mexico public utility law "by reference to its title only," N.M. Const. Art. IV, § 18. We disagree with this contention.

{64}      Article IV, Section 18 of the New Mexico Constitution provides, "No law shall be revised or amended, or the provisions thereof extended by reference to its title only; but each section thereof as revised, amended or extended shall be set out in full." The purpose of this constitutional provision is to prevent the Legislature from altering an existing statute without fully setting forth the statute thereby altered; Article IV, Section 18 does not prohibit the Legislature from referring to an existing statute or body of law, which is not altered, when enacting new legislation. *State v.*

41

*Armstrong*, 1924-NMSC-089, ¶ 93, 31 N.M. 220, 243 P. 333 ("[T]his constitutional provision applies only to enactments whose purpose is to amend, extend, or enlarge the provisions of a former law or laws, and thereby change their operation and effect."). New Energy does not identify with any certainty any legislation that the ETA revises, amends, or extends without setting forth the provisions of the altered legislation in full.

{65} New Energy instead argues that various provisions of New Mexico public utility law regarding the Commission's authority are impliedly, "almost surreptitiously," repealed or amended through the ETA. However, this Court recognized in *State ex rel. Taylor v. Mirabal*, 1928-NMSC-056, ¶ 13, 33 N.M. 553, 273 P. 928, that Article IV, Section 18 does not prohibit the amendment or repeal of other statutes by mere implication. Also, "[r]epeals by implication are not favored." *T-N-T Taxi v. N.M. Pub. Regul. Comm'n*, 2006-NMSC-016, ¶ 7, 139 N.M. 550, 135 P.3d 814.

{66} Further, Article IV, Section 18 does not prohibit the Legislature from enacting a new law that "provide[s] an additional or alternative method" of taking authorized action. *State ex rel. State Park & Recreation Comm'n v. N.M. State Auth.*, 1966-NMSC-033, ¶ 45, 76 N.M. 1, 411 P.2d 984 (internal quotation marks and citation omitted). We note, without specifically deciding, that it is possible to construe the

provisions of the ETA as new legislation that exists either in harmony with or as an alternative to other provisions governing the Commission's authority to regulate a "public utility in respect to its rates and service regulations and in respect to its securities." Section 62-6-4(A). We therefore conclude that New Energy has not established that the ETA violates Article IV, Section 18.

**7.      Whether the ETA is unconstitutional special legislation**

{67}    New Energy's final constitutional challenge attacks the ETA under Article IV, Section 24 of the New Mexico Constitution, which prohibits special legislation "where a general law can be made applicable." New Energy asserts that the ETA is special legislation because only San Juan and Four Corners may qualify as a "qualifying generating facility" and that only PNM may qualify as a "qualifying utility" under the Act. Section 62-18-2(S), (T).

{68}    However, the Constitution "does not exclude special legislation . . . when a law is required and general legislation cannot apply." *Thompson v. McKinley Cnty.*, 1991-NMSC-076, ¶ 4, 112 N.M. 425, 816 P.2d 494. "There is nothing in the Constitution which would invalidate a legislative act merely because it is special in character provided a local situation exists which under particular facts makes a general law inapplicable." *Albuquerque Metro. Arroyo Flood Control Auth. v. Swinburne*, 1964-NMSC-206, ¶ 6, 74 N.M. 487, 394 P.2d 998. In assessing the

constitutionality of legislation under Article IV, Section 24, "we give great weight to the [L]egislature's classification: Only if a statutory classification is so devoid of reason to support it, as to amount to mere caprice, will it be stricken down." *Thompson*, 1991-NMSC-076, ¶ 4 (internal quotation marks and citation omitted). We are of the view that the classification drawn by the ETA is special, but is not "so devoid of reason" that the classification "amount[s] to mere caprice." *Id.* Although the language of the ETA is general, in practice the Act only applies to a limited class of public utilities abandoning coal-fired generating facilities in New Mexico. Given the unique nature of the class and issues involved, the Legislature could reasonably conclude that the circumstances surrounding a public utility's abandonment of its coal-fired generating facilities are of such a special character that a general law could not be made to apply. We therefore reject this constitutional challenge to the ETA and turn to the sole error that New Energy alleges in the Commission's final order.

## C.  Statutory and Factual Dispute about Section 62-18-4(B)(5)

{69}    New Energy challenges the Commission's finding that PNM provided "a memorandum . . . from a securities firm . . . that the proposed issuance satisfies the current published AAA rating." Section 62-18-4(B)(5). New Energy points out that the memorandum PNM provided in satisfaction of this requirement was authored by a senior advisor at Guggenheim Securities, LLC, and contained a boilerplate

disclaimer suggesting that "[t]he views expressed herein are solely those of the author(s) and may differ from the views of other Representatives of Guggenheim Securities." The Commission accepted this memorandum in satisfaction of the statutory requirement, despite the existence of this disclaimer.

{70} New Energy suggests that this finding was in error, as the memorandum so provided was authored by an employee of a securities firm and not authored by the firm itself. The Commission disputes this claim of error, noting that the senior advisor consistently testified that he was authorized to represent Guggenheim in the proceedings and that he was acting within the scope of his authority.

{71} We conclude that the Commission's finding that this memorandum satisfied the requirements of Section 62-18-4(B)(5) is based upon a reasonable interpretation of the statute and is supported by substantial evidence in the record. In light of the whole record on this issue, the Commission reasonably found that the senior advisor possessed actual or apparent authority to speak on behalf of the securities firm. *Cf. Diversified Dev. & Inv., Inc. v. Heil*, 1995-NMSC-005, ¶¶ 29, 31, 119 N.M. 290, 889 P.2d 1212 (reviewing the requirements for an agent's actual or apparent authority to speak on behalf of a principal). We therefore reject New Energy's challenge and affirm the Commission's final order on the claim of error so presented.

## V.   CONCLUSION

{72}   In view of the foregoing, we reject New Energy's constitutional challenges to the ETA on the issues we reach herein, and we affirm the final order of the Commission granting PNM's application for a financing order in connection with its abandonment of San Juan Units One and Four.

{73}   **IT IS SO ORDERED.**

<br>

**DAVID K. THOMSON, Justice**

**WE CONCUR:**

<br>

**MICHAEL E. VIGIL, Chief Justice**

<br>

**C. SHANNON BACON, Justice**

<br>

**JULIE J. VARGAS, Justice**